UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTINE O'CONNELL,

       Plaintiff,

v.

       File No. 1:13-CV-384

       HON. ROBERT HOLMES BELL

PEPPINO'S CATERING CO., LLC, et al.,

       Defendants.
                                      /

## **OPINION**

This sexual harassment case is before the Court on Defendants' motions for summary judgment. (Dkt. Nos. 31, 33.) For the reasons that follow, Defendants' motions will be granted in part and denied in part.

## I.

Plaintiff Christine O'Connell worked for Defendants Peppino's Pizza, LLC and J & K Downtown, LLC (collectively "Peppino's") from January 2010 until her termination in May 2012. Plaintiff started as a server, but was subsequently promoted to various positions including shift supervisor, banquet manager, and catering coordinator. (O'Connell Dep. 12-19.) Plaintiff alleges in her complaint that on two occasions in January 2012, while she was working as catering coordinator, she was subjected to sexual harassment by Nick Marino, the Head Chef for Peppino's Catering, and her immediate supervisor. (Compl. ¶¶ 11, 12.) Plaintiff further alleges that when she rejected Marino's advances and demanded that he stop

the harassment, Marino acted aggressively toward her at the workplace in an attempt to scare and belittle her. (Compl. ¶¶ 14,15.) Plaintiff alleges that in February and March 2012, she reported Marino's sexual harassment and verbally abusive behavior to Eric Tuinstra, Director of Operations, to Joseph DiLeonardo, Owner of Peppino's, and to Jennifer DiLeonardo, Joseph DiLeonardo's wife. (Compl. ¶¶ 16-19.) Plaintiff alleges that the abusive behavior nevertheless continued. (Compl. ¶¶ 18-20.) Plaintiff was terminated on May 2, 2012, for "insubordination as a result of her inability to be effectively managed." (Compl. ¶ 22.) Plaintiff filed an EEOC charge and timely filed this action within 90 days of receiving a Right to Sue letter. (Compl. Ex. A.) Plaintiff has alleged sexual harassment claims against all of the defendants under Title VII (Count 1) and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") (Count 2), and a common law assault and battery claim against Defendant Marino (Count 3).

This matter is currently before the Court on separate motions for summary judgment filed by Defendant Marino and Defendant Peppino's.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252. The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

**A. MARINO**

1. Title VII

Defendant Marino moves for summary judgment on the Title VII claim against him because he was not Plaintiff's "employer."

Title VII prohibits "an employer" from discriminating against "any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000-2(a)(1). "[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997); *see also Colston v. Cleveland Public Library*, 522 F. App'x 332, 336 (6th Cir. 2013) (dismissing Title VII claim against individual defendants because they cannot be held personally liable under Title VII).

In response to Defendant Marino's motion for summary judgment, Plaintiff argues that he had supervisory authority over her. She has not presented any evidence or argument that he qualifies as her employer. Accordingly, Defendant Marino is entitled to summary judgment on Plaintiff's Title VII claim against him.

2. ELCRA

The ELCRA, like Title VII, prohibits an employer from discriminating on account of sex, which includes sexual harassment. Mich. Comp. Laws § 37.2202(1)(a) ("Discrimination because of sex includes sexual harassment.") However**, t**he ELCRA differs from Title VII regarding the liability of individuals. The ELCRA "expressly defines an 'employer' as a 'person,' which is defined under MCL 37.2103(g) to include a corporation, and also states

4

that an 'employer' includes an 'agent of that person.'" *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 857 (Mich. 2005) (quoting Mich. Comp. Laws § 37.2201(a)).

Defendant Marino contends that he cannot be held liable under ELCRA because he was a part-time consulting chef and independent contractor who was not vested with supervisory authority over any employee, including O'Connell, and because none of his alleged conduct was sexual in nature.

"[P]ersons to whom an employing entity delegates supervisory power and authority to act on its behalf are 'agents,' as distinguished from coemployees, subordinates, or coworkers who do not have supervisory powers or authority, for purposes of the CRA. If this agent is also the alleged sexual harasser, the agent is considered an employer under the CRA and may be directly and individually liable for this tort against the victim, whether or not the employing entity is liable." *Elezovic v. Bennett*, 731 N.W.2d 452, 458 (Mich. Ct. App. 2007).

Plaintiff testified that as banquet manager and catering coordinator she worked for Marino, the head catering chef. (O'Connell Dep. 13-14, 17, 36.) She testified that Marino was her boss for catering, that he told her what to do, and that he was the one she answered to. (O'Connell Dep. at 17, 18, 36.) She further testified that Joe DiLeonardo and Eric Tuinstra told her that Marino was management and that she was to follow Marino's orders. (O'Connell Dep. at 14, 35.) The Court is satisfied that there is a question of fact for trial as to whether Marino had supervisory authority over Plaintiff.

Marino also contends that he is entitled to summary judgment on Plaintiff's claim because she was not subjected to "sexual harassment." The ELCRA defines sexual harassment as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." M.C.L. § 37.2103(i). Conduct that is gender-based, but is not sexual in nature, does not constitute sexual harassment under the ELCRA. *Haynie v. State*, 664 N.W.2d 129, 130 (Mich. 2003). Marino contends that Plaintiff's allegations that Marino's aggressive reactionary behavior, including yelling at her, throwing objects, and other conduct intended to scare and belittle her (Compl. ¶ 15), do not speak to sexual harassment, but to the fact that Plaintiff and Marino simply did not get along. (Marino Br. at 9-10.) Marino also notes that Plaintiff's allegation that Marino groped her in front of other employees is contradicted by the affidavits of those other employees. (*Id.* at 10.) Marino requests the Court to scrutinize O'Connell's complaint and deposition testimony in light of the many conflicting sworn statements from disinterested parties, which, according to Marino, shows that any belittling conduct between the parties was not sexual in nature, and the contact between the parties was either welcome or initiated by O'Connell. (*Id.* at 11-12.)

Marino's argument regarding the non-sexual nature of Plaintiff's allegations discounts or ignores the sexually explicit conduct described in Plaintiff's complaint, deposition testimony, and affidavit.[1] (Compl. ¶¶ 12-13; O'Connell Dep. 25, 36; O'Connell Aff.) His

---

[1] Plaintiff states in her affidavit:

3. In January 2012, Defendant Nick Marino began subjecting me to unwanted sexual harassment in the workplace.

6

argument also requests the Court to credit the testimony of disinterested third-parties over the testimony of Plaintiff. Marino is essentially inviting the Court to weigh the evidence and to make credibility determinations. The Court is not permitted to usurp the function of the jury in such a manner. On summary judgment the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. Viewing Plaintiff's evidence in the light most favorable to her as the non-moving party, there can be no dispute that there is a material question of fact for trial as to whether Marino sexually harassed Plaintiff in violation of the ECRA.

    3. <u>Assault and Battery</u>

---

> 4. In the first instance, Defendant Nick Marino grabbed me from behind and held me tight while sucking my neck and asked me if I "would like to fuck an old man."
>
> 5. In the second instance, Defendant Nick Marino forcefully grabbed me from behind and lifted up my shirt while sticking his finger in my belly button and again asked me if I "would like to fuck an old man."
>
> . . . .
>
> 9. Following my report to Eric Tuinstra, Defendant Nick Marino ceased sexual advances, but continued to engage in offending conduct based on my gender. Such conduct included on a daily basis for several weeks at all work-related events and at the workplace Defendant Nick Marino repeatedly addressing me with gender specific, derogatory, and humiliating language, such as "bitch " and "cunt."
>
> 10. Defendant Nick Marino used such sexual language while swearing at me, yelling at me, slamming and throwing objects, and other similar conduct I believe was meant to scare, belittle, and humiliate me.

(Dkt. No. 37, Ex. J., O'Connell Aff.)

Marino contends that he never subjected O'Connell to unwelcome touching, never assaulted or battered her, and never sexually harassed her in any way.

In support of his motion for summary judgment Marino has presented sworn affidavits from a number of individuals who worked with Plaintiff and Marino who have stated that they never observed any unwelcome touching, unwelcome comments, or any other sexual harassment from Marino toward O'Connell, and they never heard Plaintiff complain of any sexual harassment. (Dkt. No. 32, Exs. 5-8, 10-12, Affidavits of Jennifer DiLeonardo, Clover Kipp, Donna Oldenburger, Brad Suttorp, Elizabeth Frederick, Leigh Platt, Bob Mangus.)

Marino contends that Plaintiff's deposition testimony and affidavit are not sufficient to create an issue of fact for trial because a nonmovant must present more than her own pleadings and affidavits. This statement, found in *American S.S. Co. v. Seafarers Welfare Plan*, 807 F. Supp. 58, 60 (E.D. Mich. 1992), is not a correct statement of the law. As noted in *Celotex*, Rule 56 "requires the nonmoving party to go beyond the pleadings and **by her own affidavits**, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" 477 U.S. at 324 (emphasis added). Contrary to Defendant Marino's assertions, a party's affidavit or deposition testimony alone may be sufficient to create a jury question for trial. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010). "A court may not disregard evidence merely because it serves the interests of the party introducing it." *Id. see also Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual

requirements for evidence presented on summary judgment – including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial – a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts."); *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n. 5 (1st Cir. 1997) ("A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.")

Marino contends that in light of the "mountain of evidence" contradicting Plaintiff's assertions, no finder of fact could find that there is a genuine issue of material fact on Plaintiff's assault and battery claim. As previously explained, on summary judgment this Court is not permitted to weigh the evidence. Plaintiff's deposition testimony and affidavit are based on her first-hand knowledge. (O'Connell Dep. 25-28, 36, 38, 40-41, 45; Dkt. No. 37, O'Connell Aff. ¶¶ 3-5, 9, 10.) Plaintiff has also presented evidence from former employees of Peppino's that tends to support her position, albeit indirectly. (Dkt. No. 36, Ex. F-I, Maclam Aff., Goode Aff., Dawson Aff., Hulst email.) Although Defendant has presented a number of witnesses who either directly or indirectly contradict Plaintiff's claim, Plaintiff has presented more than a scintilla of evidence to support her claim. She has presented evidence that, if believed by a jury, could support a verdict in her favor on her assault and battery claim. Accordingly, Defendant Marino's motion for summary judgment on Plaintiff's assault and battery claim must be denied. A jury could find for Plaintiff if they

believed her evidence.

**B. PEPPINO'S**

Peppino's moves for summary judgment on Plaintiff's sexual harassment claims under Title VII and the ELCRA (Counts 1 & 2).

1. <u>Title VII</u>

Evaluating an employer's liability under Title VII for sexual harassment in the workplace depends on the status of the alleged harasser, i.e., whether he was a co-worker or a supervisor. If the harasser is a "supervisor," and if the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id.*

Peppino's moves for summary judgment on Plaintiff's Title VII claim on two grounds. First, Peppino's contends that it cannot be held vicariously liable for any alleged harassment by Marino because Marino was not a supervisor.

The term "supervisor" has been given a specific meaning under Title VII. The Supreme Court held in *Vance* that an employee is a "supervisor" for purposes of vicarious liability under Title VII "only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 133 S. Ct. at 2443. The Supreme Court explicitly rejected a more open-ended or nebulous

approach that would tie supervisor status to the ability to exercise significant direction over another's daily work. *Id.*

Peppino's has presented evidence that Marino was not an employee; he was part-time consulting chef for the downtown restaurant and the catering company. (DiLeonardo Dep. 10-12; Marino Dep. 9.) Marino reported to Eric Tuinstra, who supervised the catering business, and to DiLeonardo. (J. DiLeonardo Dep. 15; Marino Dep. 30.) Tuinstra described Marino as "kind of like a consultant," but more of a "back-of-the-house kitchen/chef/catering consultant." (Tuinstra Dep. 14.) Peppino's has also presented evidence that Marino had no authority to fire employees; only Tuinstra and DiLeonardo had that ability. (Tuinstra 12-13; DiLeonardo 8-9.)

Plaintiff acknowledged that she had "absolutely no idea" whether Marino could fire her, but she assumed that Marino could do so because Marino was her boss for catering, and DiLeonardo and Tuinstra told her to follow Marino's orders. (O'Connell Dep. 18, 23.) She also relies on evidence that Marino recommended that she be hired for the catering position. (DiLeonardo Dep. 24.) Peppino's denies giving Marino authority to direct Plaintiff's work, but does not deny that Marino did in fact often direct the work of others. Tuinstra testified that Marino would make sure the prep workers did the work from the night before and kept the kitchen tidy, and he would point out if jobs were not done. (Tuinstra Dep. 16). DiLeonardo testified that when Marino was in the kitchen, he would bark at employees and tell them how to do their jobs. (DiLeonardo Dep. 14.)

11

Although Plaintiff has created an issue of fact as to whether Marino was authorized to direct her work, this is not sufficient under *Vance* to create an issue of fact for trial as to whether Marino was empowered to take tangible employment actions against her or to effect a significant change in her employment status. *See Vance*, 133 S. Ct. at 2443 (rejecting a definition of supervisor which ties supervisor status to the ability to exercise significant direction over another's daily work). Plaintiff contends, however, that Peppino's effectively delegated the power to take tangible employment actions to Marino. In support of this argument Plaintiff directs the Court to the following statement from *Vance:*

> If an employer does attempt to confine decisionmaking power to a small number of individuals, those individuals will have a limited ability to exercise independent discretion when making decisions and will likely rely on other workers who actually interact with the affected employee . . . Under those circumstances, the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies.

*Id.* at 2452. Plaintiff has presented evidence that DiLeonardo left oversight of the catering business to Tuinstra, and that neither DiLeonardo nor Tuinstra attended catering events. (DiLeonardo Dep. 11, 17-20; Tuinstra Dep. 35.) Marino, who was the head chef at the catering events, reported directly to DiLeonardo and Tuinstra, and had a history of making recommendations on hiring and firing that were followed by DiLeonardo. (DiLeonardo Dep. 12; Marino Dep. 34, 57, 59.) Plaintiff contends that this evidence is sufficient evidence to create an issue of fact as to whether Defendants effectively delegated the power to take tangible employment actions to Marino.

The Court disagrees. The unrebutted evidence reflects that Tuinstra worked daily with Plaintiff at the office to discuss issues relating to food, volume, and invoicing for catering events. (DiLeonardo Dep. 20.) Tuinstra received input on Plaintiff's performance at catering events not only from Marino, but also from the catering clients. (Tuinstra Dep. 36-37.) The evidence does not support a finding that Peppino's had such limited interaction with Plaintiff that it had to rely on Marino and effectively delegate to Marino the power to take tangible employment action with respect to Plaintiff. Accordingly, the Court will grant Peppino's motion for summary judgment on Plaintiff's Title VII claim to the extent it asserts vicarious liability on the part of Peppino's based on Marino's supervisory role.

Even though Plaintiff cannot prevail on her vicarious liability claim against Peppino's, she can still prevail on her Title VII claim against Peppino's if she can show that Peppino's was "negligent in failing to prevent harassment from taking place." *Vance*, 133 S. Ct. at 2453. "Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant." *Id.*

Peppino's contends that Plaintiff did not allege a negligence theory in her complaint, and that she cannot add new claims in response to a summary judgment motion. Contrary to Peppino's assertions, Plaintiff has adequately plead a negligence theory in her complaint. Plaintiff alleged that Peppino's had actual notice of Marino's conduct and that it did not exercise reasonable care to prevent his sexually harassing behavior. (Compl. ¶¶ 34, 35.)

13

Peppino's contends that even if the negligence claim is properly before the Court, it was not negligent because O'Connell never complained to management that Marino was sexually harassing her. Tuinstra testified that O'Connell only complained that she and Marino could not get along at catering events, and that she never complained about any alleged sexual harassment. (Tuinstra Dep. 81-83.) DiLeonardo testified that O'Connell and Marino were always fighting and bickering, but that she never complained of any inappropriate sexual comments or contacts. (DiLeonardo Dep. 21-22, 28.). O'Connell herself admitted that she did not mention sexual harassment at her meeting with Marino and Tuinstra. (O'Connell Dep. 37.) In addition, a number of Peppino's employees have filed affidavits stating that they never heard Plaintiff complain of any sexual harassment. (Affs. of Jennifer DiLeonardo, Clover Kipp, Donna Oldenburger, Brad Suttorp, Elizabeth Frederick, Leigh Platt, Bob Mangus.)

Notwithstanding Peppino's evidence that it was not on notice of any sexual harassment, Plaintiff indisputably testified that she notified both Tuinstra and DiLeonardo that she was being sexually harassed by Marino. (O'Connell Dep. 25, 36.) Although Plaintiff acknowledged that she did not mention sexual harassment at her meeting with Tuinstra and Marino on March 9, 2012, she testified that she had two meetings with Tuinstra concerning Marino, and that she did report the sexual harassment to Tuinstra at the February meeting. (*Id.* at 25, 36-37.)

Peppino's contends that despite Plaintiff's bare assertions, Marino never sexually

14

harassed her. In support of this contention Peppino's attempts to discredit Plaintiff's testimony and supporting evidence. Peppino's suggests that because O'Connell often expressed her disdain for Marino, that made it "even more unlikely " that he would attempt to sexually proposition her. Peppino's contends that Amanda Dawson's affidavit is "unreliable and inaccurate" because Dawson herself is pursuing a claim against Defendants. *See Dawson v. Peppino's Pizza, L.L.C.*, No. 1:13-CV-381 (W.D. Mich.) (Maloney, C.J.) (raising similar sexual harassment and assault and battery claims against Peppino's and Marino). Peppino's also contends that Plaintiff cannot be believed because other witnesses have contradicted her assertions.

As noted in Section II above, in reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman*, 703 F.3d at 895. Furthermore, as noted in Section III(A)(3) above, Plaintiff's deposition testimony and affidavit which are based on her first-hand knowledge may themselves be sufficient to create a material issue of fact for trial. The Court is satisfied that Plaintiff's evidence is sufficient to create an issue of fact for trial as to whether Peppino's was on notice that she was being sexually harassed and whether, given that notice, Peppino's was negligent in failing to prevent harassment from taking place.

Peppino's contends that even if there is an issue of fact for trial as to Peppino's negligence, Peppino's has shown that it had a legitimate, non-discriminatory reason for Plaintiff's termination. Specifically, Peppino's has presented evidence that Plaintiff was

terminated for insubordination and her inability to be effectively managed because she hung-up on Tuinstra, and because they received complaints about her work. (DiLeonardo Dep. 25-26.) Peppino's contends that Plaintiff has not carried her burden under the *McDonnell Douglas* burden-shifting framework of showing that the reason was pretextual.

"[T]he Supreme Court developed the *McDonnell Douglas/Burdine* burden-shifting analysis for Title VII cases as an available method of proof on the element of the [defendant's] subjective intent where no direct evidence of discriminatory intent exists." *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 843 (6th Cir. 1996). "[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). In this case, Plaintiff has presented direct evidence of sexual harassment. Accordingly, contrary to Peppino's argument, the *McDonnell-Douglas* framework does not apply, and the Court concludes that there is an issue of fact for trial as to whether Peppino's is liable for violating Title VII under a negligence theory.

2. ELCRA

Peppino's contends that it is entitled to summary judgment on Plaintiff's sexual harassment claim under the ELCRA because there is no evidence that Peppino's was actually or constructively notified of the alleged sexual harassment until O'Connell's termination for insubordination was imminent.

"[E]mployer responsibility for sexual harassment can be established only if the

16

employer had reasonable notice of the harassment and failed to take appropriate corrective action" *Elezovic*, 697 N.W.2d at 861 (citing *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 916 (Mich. 2000)). "'[N]otice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring.'" *Id.* (quoting *Chambers*, 614 N.W.2d at 919.) "Thus, actual notice to the employer is not required; rather, the test is whether the employer knew or should have known of the harassment." *Id.*

Peppino's argument with respect to Plaintiff's ELCRA claim fails for the same reason that its Title VII claim fails. There is sufficient evidence in the record to create a genuine issue of material fact for trial regarding notice of sexual harassment. Peppino's motion for summary judgment on Plaintiff's ELCRA claim will accordingly be denied.

3. Sanctions

Peppino's has requested this Court to grant sanctions *sua sponte* under Rule 11 because Plaintiff pursued frivolous claims against the corporate defendants despite the fact that she clearly knew or should have known that Marino was not her supervisor. A party who seeks sanctions must make a separate motion for sanctions under Rule 11(c)(2). Although the Court does have authority to issue sanctions on its own initiative under Rule 11(c)(3), the Court declines to do so. The issue of whether an alleged harasser is a supervisor is fact intensive, and the Court does not find that Plaintiff's argument was frivolous or presented for an improper purpose such that it would warrant the issuance of a show cause order. *See*

17

Fed. R. Civ. P. 11 Advisory Committee Notes, 1993 Amendments (noting that "show cause orders will ordinarily be issued only in situations that are akin to a contempt of court"); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (holding that when there is no longer an opportunity to withdraw the challenged submission, a district court can impose Rule 11(c)(3) sanctions on its own initiative only on a finding of subjective bad faith); *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006) (holding that Rule 11 should be applied with "particular strictness" when sanctions are imposed on the court's own initiative, but declining to decide whether the standard is different from, and more stringent than, the standard for sanctions initiated by motion of a party); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (holding that in the absence of the safe harbor, a court is "obliged to use extra care in imposing sanctions").

## IV.

For the reasons stated herein, Defendant Marino's motion for summary judgment will be granted as to the Title VII claim against him, but denied as to the ELCRA claim and the assault and battery claim. Defendant Peppino's motion for summary judgment will be granted as to Plaintiff's vicarious liability claim under Title VII, but denied as to the negligence claim under Title VII and the ELCRA claim.

An order consistent with this opinion will be entered.


Date: February 27, 2014          /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 UNITED STATES DISTRICT JUDGE